Davis v. The State.

Filed May 9, 1894.

———————◆———————

No. 17,276.

## Davis v. The State.

Surety of the Peace.—*Sufficiency of Affidavit.*—*Fear of Personal Injury.*—An affidavit for surety of the peace, of the following tenor, is sufficient: A, being duly sworn, on his oath says that he has just cause to fear, and does fear, that B will kill and murder him, and that he makes this affidavit only to secure the protection of the law, and not from anger or malice.

Same.—*Affidavit Sworn to Before Notary Public.*—An affidavit for surety of the peace may be sworn to before a notary public.

Same.—*A Criminal Action.*—*Nature of.*—*Preponderance of Evidence.*—While a prosecution for surety of the peace is a criminal action, yet

it is simply for the prevention of crime, the only question to be decided being whether the prosecuting witness has just cause to entertain the fears expressed in his affidavit, which is to be decided by the preponderance of the evidence.

SAME.—*Reasonable Doubt.*—*Province of Jury.*—The doctrine of reasonable doubt has no place in such an action, nor is the jury the judge of the law.

SAME.—*Procedure.*—*Failure of Defendant to Testify.*—*Instruction to Jury.*—In such case, the following instruction was correctly refused: "This case is governed by the law governing criminal cases, except where the law provides otherwise. If the defendant did not testify in his own behalf, you can not take this fact into consideration, nor talk about it in the jury room."

SAME.—*Evidence of Communication of Threats.*—It was not error to permit the complaining witness to testify that certain persons told him, in the absence of the defendant, that the defendant threatened to kill him and to do him other injuries, where the evidence is not in the record; for it must be presumed that the threats were also proved.

SAME.—*Misconduct of Counsel.*—*Argument to Jury.*—Where, in his argument to the jury, the State's attorney said the following: "Gentlemen of the jury—The defendant did not go on the witness stand and testify in this case. He knew we had his neighbors in the court, and that we would impeach him if he did testify." Also, "If * * the complaining witness did swear to a lie, as Mr. —— says he did, why did the defendant not call his neighbors, who are here in court?" And, also, "We have an illustration of permitting cranks to run at large, in the killing of Carter Harrison, the mayor of Chicago, the most outrageous murder of our time. Had the murderer been placed under bonds, that murder would not have occurred." Such remarks were beyond the bounds of legitimate argument, and being sanctioned by the court, amount to reversible error.

From the Huntington Circuit Court.

*B. F. Ibach* and *W. A. Mitchell,* for appellant.

*A. G. Smith,* Attorney-General, *S. E. Cook, C. W. Watkins, F. W. Cady* and *D. L. Cady,* for State.

HOWARD, C. J.—This was a prosecution for surety of the peace, based on the following affidavit:

"Joseph Taylor, being duly sworn, on his oath says that he has just cause to fear, and does fear, that said Joseph B. Davis will kill and murder him, and that he

Davis *v.* The State.

makes this affidavit only to secure the protection of the law, and not from anger or malice."

We think this affidavit is drawn in substantial compliance with the provisions of section 1675, R. S. 1894 (section 1606, R. S. 1881).

The statute provides that the fear complained of by one bringing the suit shall be "that another will destroy or injure his property, or injure, by violence, himself or some member of his family or his ward."

The fear complained of here is that the appellant "will kill and murder" the complaining witness; this is certainly a complaint of fear of injury to himself by violence.

It is also claimed as error that the affidavit was sworn to before a notary public, whereas the statute, *supra*, provides that it shall be made before a justice of the peace.

By section 8039, R. S. 1894 (section 5964, R. S. 1881), a notary is given power "to administer oaths generally, and to take and certify affidavits and depositions."

Like authority is given in section 8086, R. S. 1894 (section 6010, R. S. 1881).

In *State, ex rel.,* v. *Maners,* 16 Ind. 175, this court held that: "A prosecution for surety of the peace is a criminal prosecution. 4 Blacks. Comm., 251; *State, ex rel.,* v. *Abrams,* 4 Blackf. 440. The practice, therefore, in criminal cases governs, where the act authorizing such prosecutions is silent upon a point of practice under it."

And in *Hunter* v. *State,* 102 Ind. 428, it was held that, under the statutes above cited, an affidavit filed before a justice of the peace, charging a crime, may be sworn to before a notary public. It follows that an affidavit for surety of the peace may also be sworn to before a notary public.

The ruling of the court in refusing to give the following instruction is complained of:

"This case is governed by the law governing criminal cases, except where the law provides otherwise. If the defendant did not testify in his own behalf, you can not take this fact into consideration nor talk about it in the jury room."

This instruction the court refused to give on the ground that section 1867, R. S. 1894 (section 1798, R. S. 1881), did not apply to surety of the peace cases.

It is true that prosecutions to obtain surety of the peace are criminal prosecutions. *State, ex rel.,* v. *Abrams, supra*; *State, ex rel.,* v. *Maners, supra*; *Murray* v. *State,* 26 Ind. 141; *State* v. *Vankirk,* 27 Ind. 121; *Deloohery* v. *State,* 27 Ind. 521; *Fisher* v. *Hamilton,* 49 Ind. 341; *State* v. *Carey,* 66 Ind. 72.

But while such proceedings are criminal prosecutions, they are not prosecutions for the punishment, but for the prevention of crime. The question to be decided is not whether the defendant is guilty of any crime, but whether the complaining witness has just cause to entertain the fears expressed in his affidavit. This issue is to be decided by the preponderance of the evidence. The doctrine of reasonable doubt has no place, nor is the jury the judge of the law, as in criminal cases.

The only question to be decided is to be decided, as in civil cases, by the weight of the evidence. *Murray* v. *State, supra; Arnold* v. *State,* 92 Ind. 187; *Stone* v. *State, ex rel.,* 97 Ind. 345.

The evidence in the case being treated, therefore, as in civil cases, and the instruction requested being such as is applicable alone to criminal cases, we think the ruling of the court in refusing to give the instruction can not be held erroneous.

It is claimed as error that the court permitted the complaining witness to testify that certain persons told him, in the absence of the defendant, that the defend-

ant threatened to kill him and to do him other injuries. This was objected to as hearsay evidence. It is proper to prove threats made against the complaining witness by the defendant, and that such threats were communicated to the complaining witness. The evidence is not in the record, and we are unable to say whether the threats here complained of were proved on the trial as made by the defendant, or not. If it was proved on the trial that such threats were made by the defendant, then it would be not only proper but necessary to prove that the knowledge of the threats was communicated to the complaining witness. It is the threat and the communication of that threat to the complaining witness that puts him in the fear of which he complains. Presuming, as we must in the absence of the evidence, that the court did its duty, we must take it for granted that the court only allowed the evidence as to the communication of the threats on the ground that the threats themselves were also proved. On that ground the admission of the evidence complained of was correct.

It is complained that in the argument to the jury the attorney for the State made the following statements:

"Gentlemen of the jury, the defendant did not go on the witness stand and testify in this cause. He knew we had his neighbors in the court, and that we would impeach him if he did testify."

And the following:

"Gentlemen of the jury, if Joseph Taylor, the complaining witness, did swear to a lie, as Mr. Ibach says he did, why did the defendant not call his neighbors, who are here in court?"

And, also, these words:

"Gentlemen of the jury, we have an illustration of permitting cranks to run at large, in the killing of Carter Harrison, the mayor of Chicago, the most outrageous

murder of our time. Had the murderer been placed under bonds, that. murder would not have occurred.''

And it is further claimed that the court erred in stating, in the presence of the jury, that the counsel for the State had a right to comment on the fact that the defendant did not offer himself as a witness in the case, and also had a right to make the remarks about calling the neighbors of the complaining witness to impeach his evidence, as legitimate and proper argument in the case.

It is true, as said in *City of Lafayette* v. *Weaver*, 92 Ind. 477, that ''There must be a plain case of violation of the privilege of argument, which has not been sufficiently counteracted by the trial court, and such misconduct as can be said by this court to have been injurious to the objecting party, to justify us in reversing the action of the trial court in overruling a motion for a new trial based upon such a departure of counsel.''

In this case, the misconduct in argument, if it were such, was not counteracted by the trial court; but, on the contrary, the court said, in the presence of the jury, that counsel had a right to make the remarks complained of.

As to whether the remarks were probably injurious to the objecting party, it is clear that their purpose was to · discredit the defendant in the eyes of the jury. The fact that the jurors were told that the witnesses were present in court who would have impeached the defendant if he had gone upon the witness stand, and intimating that he did not dare to call those witnesses, his own neighbors, to his defense, although they were present in court, must certainly have tended to impress the jury with the weakness of the defense. Then the allusion to the assassination of the mayor of Chicago, at that time fresh in the minds of the people, could hardly help but inflame the minds of the jury. The death of Carter Harrison

Davis *v*. The State.

was not then a historical event upon which the minds of the jury might rest without emotion. It was as yet in the realm of the newspapers and the deliberations of courts and juries. The indignation of the people was even rising rather than subsiding.

The comments upon evidence that might have been, but was not, given by witnesses, neighbors of defendant, who, the jury were told, were sitting uncalled in court, were particularly objectionable. It is the business of an attorney to comment upon the evidence which has been given, not upon that which might have been given.

It was said by the lamented Mitchell, in the case of *Bessette* v. *State*, 101 Ind. 85, that "it may sometimes happen, as for aught we know was the case in this instance, that in his zeal to do his duty the bounds of propriety may be unwittingly overstepped by a  *  *  * prosecutor, and while it would be a most ungracious task for this court to say anything which would in any degree suppress the highest enthusiasm of forensic effort in behalf of the State, or in any case at the bar, it should be remembered that fair, open debate, rather than a resort to questionable expedients, will best subserve the ends of justice. To arrive at the exact truth and justice of the case according to the facts and the law should be the aim of all forensic strife, and to this end the utmost power of logical reasoning and deduction or proper illustration may be employed. To master and put them under contribution are the marks of the accomplished advocate."

We can not avoid the conviction that the appellant's case was unfairly presented to the jury, and that in the interests of justice he should have a new trial.

The judgment is reversed, with instructions to grant a new trial.

Filed May 17, 1894.