No. 17,500.

## OLESON v. LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY.

VERDICT.—*Directing Verdict for Defendant.—Failure to Prove Freedom from Contributory Negligence.—Trial.*—A verdict is properly directed for defendant in an action for personal injuries, where the plaintiff fails to prove affirmatively that his fault or negligence did not contribute to the injury, even though he has established all the other facts of his cause of action.

RAILROAD.—*Traveler Crossing Railroad Track on Highway.—Contributory Negligence.*—One who, in approaching a railroad track has an unobstructed view of an approaching train, is not relieved from contributory negligence in attempting to cross the track, by the fact that his view becomes obstructed by the smoke from a train going in an opposite direction.

SAME.—*Highway and Track Crossing.—Contributory Negligence.*—One who attempts to cross a railroad track immediately after the passage of a train, whose smoke obscures the view in the opposite direction, but is rapidly being carried away by the wind, is guilty of contributory negligence in not waiting until the view becomes clear.

From the Porter Circuit Court.

*J. B. Peterson*, for appellant.

*F. E. Baker, C. W. Miller, G. C. Greene* and *O. G. Getzen-Danner*, for appellee.

MONKS, J.—This action was brought by appellant to recover damages for an injury received while attempting to cross appellee's railroad track at a grade crossing.

There was a general denial to the complaint and trial by jury. After appellant had introduced all his evidence and rested his case, the jury, by direction of the court on motion of appellee, returned a verdict for appellee.

The court thereupon over a motion for a new trial rendered judgment against appellant.

The only question presented is: Did the court err in instructing the jury to find for appellee? This instruction was given on the ground stated therein that the appellant had not shown that he was free from contributory negligence. Appellant contends that the evidence was such that the question of whether or not appellant was guilty of contributory negligence should have been submitted to the jury. ·

The determination of the question presented requires an examination of the evidence. The only evidence given was the testimony of plaintiff and upon his statements the case must be determined.

It appears from the evidence that, at Miller's Station, where the injury occurred, the railroad tracks of appellee run east and west; that at the time of the injury and for several years prior thereto there were two main tracks, the north track was used by trains going east and the south track by trains going west; there was a highway running north and south, which crossed these tracks; that running east from this highway was another highway immediately south and adjoining the right of way of appellee; that the right of way of appellee is one hundred feet wide; that appellant had lived a number of years within one hundred and fifty feet of this highway crossing, had crossed it often, and was thoroughly familiar with the method of running trains upon these two main tracks; he knew that the north track was for east bound trains, and the south track was for west bound trains, and that freight and passenger trains passed each other frequently at this point; immediately before the accident, appellant was going·west upon the east and west highway south of the tracks, driving one horse attached to a light wagon,

upon which there were three or four dump boards upon which he was sitting sideways between the wheels of the wagon with his face to the south and his back to the tracks; as he turned north in the highway running north and south, he faced to the north and looked both ways east and west and saw a freight train coming from the west going east on the north track; he stopped about forty feet from the south track to wait for this east bound train to pass; when he stopped, he looked to the east, and saw nothing; when he stopped the east bound train on the north track was west of the depot and about four hundred feet west of the crossing; the day was somewhat dark and overcast, atmosphere heavy and the clouds obscured the sun and appellant could not see over one-half mile to distinguish objects; the wind was blowing from the northeast to the southwest, the east bound train on the north track was going at about the rate of fifteen miles per hour, and was throwing out large volumes of dense black smoke which fell to the ground on the south side of the train or between the train and appellant as it passed the highway crossing and proceeded east, and continued to throw out smoke as it proceeded east, until after the accident, and the dense black smoke obscured the view on the south track east of the crossing; there were about thirty cars in the east bound train and the train was about nine hundred feet in length; after the caboose at the rear of the east bound train had passed the crossing about two or three rail lengths, appellant, who had remained sitting upon his wagon when it had stopped, started his horse and drove upon the crossing; just before he started his horse he looked to the east and west and listened, but he could not see to the east along the south track but a short distance on account of the smoke which had been thrown from the engine

drawing the east bound train; at the time appellant started his horse, the wind was clearing away the smoke, and to the west of the crossing it had almost disappeared, and appellant could see to the east about one hundred feet; as his horse stepped upon the track appellant, who was and had been, from the time he started, looking east for a train saw an engine and train of cars about one hundred feet away approaching him from the east on the south track at the rate of ten or fifteen miles per hour, he whipped his horse with the lines and endeavored to pass in front of the engine, but the rear wheel of the wagon was struck by the train and appellant injured; appellee's servants on the train which struck appellant did not sound the whistle or ring the bell while approaching said crossing; from the point where appellant stopped, about forty feet south of the south track, he could see, except for the smoke, a distance of at least one-half mile eastward along the south main track; and there was no smoke to obscure this view to the east along the south main track until the engine in front of the east bound train on the north main track passed upon said crossing; there were no intervening objects or obstructions except a wire fence and telegraph poles.

It is thoroughly settled that if the facts are undisputed and only one inference can reasonably be drawn from them, the question whether there is or is not contributory negligence is one of law for the court. *Korrady, Admx.*, v. *Lake Shore, etc., R. W. Co.*, 131 Ind. 262; *Rodgers* v. *Leyden*, 127 Ind. 50, and cases cited; *Board, etc.*, v. *Chipps, Admr.*, 131 Ind. 56 (16 L. R. A. 228).

But if the facts are disputed or whenever there may reasonably be a difference of opinion as to the inferences

and conclusions from the facts it is a question for the jury. *Rodgers* v. *Leyden, supra.*

We think it is also correct doctrine that where the evidence given at the trial with all the inferences which the jury may justifiably draw from it is insufficient to support a verdict for the plaintiff so that such verdict, if returned, should be set aside, the court is not bound to submit the case to the jury but may direct a verdict for the defendant. *Weis* v. *City of Madison*, 75 Ind. 241 (254), and cases cited; *Faris* v. *Hoberg*, 134 Ind. 269 (272, 274); *Ohio, etc., R. W. Co.* v. *Dunn*, 138 Ind. 17 (27); *Sharpe, Admx.,* v. *Commercial Travelers, etc.; Assn.,* 139 Ind. 92 (95); *Railroad Co.* v. *Houston*, 95 U. S. 697; *Schofield* v. *Chicago, etc., R. W. Co.*, 114 U. S. 615, 50 Am. Rep. 653, 656; *Continental Imp. Co.* v. *Stead*, 95 U. S. 161; *Baylis* v. *Travelers Ins. Co.*, 113 U. S. 316; *Improvement Co.* v. *Munson*, 14 Wall. 442; *Southern Pacific Co.* v. *Pool* (U. S. Sup. Ct.), 16 Sup. Ct. Repr. 338; Thompson Trials, sections 2249, 2250, 2262; Elliott Gen. Prac., sections 876, 889; 11 Am. and Eng. Ency. of Law, section 3, pages 243, 246.

The rule is thus stated by Judge Elliott in his General Practice, section 889 : "The test for determining when a case should be taken from the jury is substantially the same as upon a motion for a non-suit; and where a verdict, if against the party seeking to have the case taken from the jury, would have to be set aside as contrary to the law and the evidence, a verdict in his favor should be directed, upon proper application.    *    *    The doctrine once prevailed in many jurisdictions that 'wherever there is any evidence, however slight, tending to support a material issue, the case must go to the jury,' and this rule is still applied in some States, but 'the modern decisions have established a more reasonable rule, to-wit, that before the evidence is left to the jury,

there is or may be in every case a preliminary question for the judge, not whether there is literally *no* evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed.' Of course if there is no evidence whatever upon a material and necessary point a verdict should be directed upon proper application against the party having the burden of proof, and as we have seen this is the better rule also where the evidence, with all legitimate inferences, will not support a verdict."

It is settled law in this State that when a person crossing a railroad is injured by a collision with a train, the fault is *prima facie* his own, and he must affirmatively show that his fault or negligence did not contribute to the injury before he is entitled to recover for such injury. *Smith* v. *Wabash R. R. Co.*, 141 Ind. 92, and cases cited. *Cincinnati, etc., R. W. Co.* v. *Duncan, Admr.*, 143 Ind. Sup. 524, and cases cited.

It is essential to appellant's right to recover that he aver and prove that he was free from negligence proximately causing his injury. *Cincinnati, etc., R. R. Co.* v. *Duncan, supra,* and cases cited. *Smith* v. *Wabash R. W. Co., supra,* and cases cited;. *Cincinnati, etc., R. W. Co.* v. *Howard,* 124 Ind. 280 (284) (8 L. R. A. 593); *Mann* v. *Belt R. R. and Stockyard Co.,* 128 Ind. 138, and cases cited; *Pennsylvania Co.* v. *Meyers, Admx.,* 136 Ind. 242, and cases cited.

If he failed to prove this essential and indispensable element of his cause of action, it was the duty of the trial court to instruct the jury to find against him, even though he established all the other essential facts of his cause of action. *Cincinnati, etc., R. W. Co.* v. *Duncan,*

*supra*, and cases cited; *Chase* v. *Maine, etc., R. R. Co.*, 77 Me. 62, 52 Am. Rep. 744.

It is settled law in this jurisdiction that when one approaches a point where a highway crosses a railroad track on the same level, the railroad track is itself a warning of danger, and it is his duty to proceed with caution, and if he attempts to cross the track either on foot or in a vehicle of any kind, he must exercise ordinary care under all the circumstances.

He must assume that there is danger, and act with ordinary care and prudence upon that assumption. The law defines precisely what the term ordinary care under all the circumstances means in these cases.

The question of care at railway crossings as affecting the traveler is no longer, as a rule, a question for the jury. The *quantum* of care is exactly prescribed as a matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings and listen for approaching trains.

In proportion as the danger increases must the vigilance of the person attempting to cross increase. He is rigidly required to do all that care and prudence would suggest to avoid injury. And when from physical infirmities, darkness, snow, fog, smoke, steam, the inclemency of the weather, noise of any kind, buildings or other obstructions and hindrances, it is more difficult to see or hear, greater precautions must be taken to avoid injury than would otherwise be necessary; and under such circumstances there can be no excuse for a failure to use such reasonable precautions as would probably have prevented injury. If the traveler by looking could have seen an approaching train, or by listening could have heard it in time to have avoided injury, it will be presumed if he is injured by collision that he did not look and listen, or if he did look and

listen he did not heed what he saw or heard. Such conduct is negligence *per se.*

Mental absorption or reverie from business, grief or other cause will not excuse the omission of duty to look and listen. From the numerous cases sustaining the foregoing propositions we cite the following : *Smith* v. *Wabash R. W. Co., supra,* and cases cited ; *Cincinnati, etc., R. R. Co.* v. *Duncan, supra,* and cases cited ; *Cadwallader* v. *Louisville, etc., R. W. Co.,* 128 Ind. 518 ; *Mann* v. *Belt R. R. and Stockyard Co., supra; Indiana, etc., R. W. Co.* v. *Hammock,* 113 Ind. 1 ; *Cones, Admr.,* v. *Cincinnati, etc., R. W. Co.,* 114 Ind. 328 ; *Stewart, Admx.,* v. *Pennsylvania Co.,* 130 Ind. 242 ; *Thornton* v. *Cleveland, etc., R. W. Co.,* 131 Ind. 492 ; *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31 ; *Cincinnati, etc., R. W. Co.* v. *Howard,* 124 Ind. 280 (288–289) *supra;* *Ohio, etc., R. W. Co.* v. *Hill, Admx.,* 117 Ind. 56 ; *Heaney* v. *Long Island R. W. Co.,* 112 N. Y. 122 ; *Foran* v. *New York, etc., R. R. Co.,* 64 Hun., 510 ; *Whalen* v. *New York Cent., etc., R. R. Co.,* 15 N. Y. Supp. 941 ; *Chase* v. *Maine Cent. R. R. Co.,* 78 Me. 346 ; *Merkle* v. *N. Y., etc., R. R. Co.,* 49 N. J. L. 473 ; *Seefed* v. *Chicago, etc., R. W. Co.,* 70 Wis. 216, 5 Am. St. Rep. 168 ; *Wilcox* v. *Rome, etc., R. R. Co.,* 39 N. Y. 358, 100 Am. Dec. 440, and note 448 ; *Tolman* v. *Syracuse, etc., R. R. Co.,* 98 N. Y. 198, 50 Am. Rep. 649, note 653 ; *Pennsylvania R. R. Co.* v. *Beale,* 73 Pa. St. 504, 13 Am. Rep. 753 ; *North Pennsylvania R. R. Co.* v. *Heileman,* 49 Pa. St. 60 ; *Butler* v. *Gettysburg, etc., R. R. Co.,* 126 Pa. St. 160 ; *Brady* v. *Toledo, etc., R. R. Co.,* 81 Mich. 616 ; *Fletcher* v. *Fitchburg R. R. Co.,* 149 Mass. 127 (134) (3 L. R. A. 743); *Marty* v. *Chicago, etc., R. W. Co.,* 38 Minn. 108 ; *McCrory, Admx., etc.,* v. *Chicago, etc., R. W. Co.,* 31 Fed. Repr. 531.

There is no exception to the rule stated as to a traveler's duty at a crossing, except where the traveler by some act of the company has been misled and thrown off his guard and thus prevented from taking the proper precautions. *Smith* v. *Wabash R. R. Co., supra; Cadwallader* v. *Louisville, etc., R. W. Co., supra; Ohio, etc., R. W. Co.* v. *Hill, supra,* on page 62 ; *Korrady* v. *Lake Shore, etc., R. W. Co.,* 131 Ind. 261 (264–265); *Cincinnati, etc., R. W. Co.* v. *Howard, supra.*

The failure of the engineer to sound the whistle or ring the bell does not relieve the person approaching a crossing from the necessity of taking ordinary precaution for his safety.    Negligence of the employes of a railroad company is no excuse for negligence on the part of the person injured. *Korrady* v. *Lake Shore, etc., R. W. Co., supra,* p. 264, and cases cited ; *Thornton* v. *Railway Co., supra,* pp. 497–498, and cases cited; *Smith* v. *Wabash R. R. Co., supra,* ; *Cadwallader* v. *Louisville, etc., R. W. Co., supra,* and cases cited; *Railroad Co.* v. *Houston, supra; Schofield* v. *Chicago, etc., R. W. Co., supra;* note 50 Am. Rep. 653 ; 4 Am. and Eng. Ency. of Law 73, note 1, 74, note 3 ; Beach Contrib. Negl., section 185.

It is clear, from appellant's testimony, that when he came to a stop forty feet south of the south main track the east bound train was about opposite the depot, which was two hundred and fifty feet west of the crossing.    This train was about nine hundred feet long, and going east on the north main track at about the rate of fifteen miles per hour.    When the caboose of the east bound train had passed two or three rail lengths east of the crossing, appellant saw the engine of the west bound train one hundred feet east of the crossing.    This train was going at about the rate of

fourteen or fifteen miles per hour, about the same rate per hour as the east bound train. It is clear that from the time the east bound train was two hundred and fifty feet west of the crossing until it reached the crossing the west bound train on the south main track was within one-half mile of the crossing and in plain view thereof. During all this time, and until the engine drawing the east bound train passed onto the crossing, there was no smoke to obscure appellant's view east on the south main track, and if he had looked in that direction at any time between the time he stopped forty feet south of the track and the time the engine of the east bound train passed onto the crossing, he would have seen the train on the south main track approaching from the east. He had an unobstructed view to the east, and he either did not look in that direction, or if he looked did not heed what he saw. It would be no excuse that immediately afterwards the smoke obscured his view of the approaching train, so that he could not see its approach. He knew it was approaching and went upon the track at his peril. Such conduct, under the authorities cited, is negligence *per se.*

If, however, it were conceded that when the smoke from the engine going east on the north main track settled down on the south main track, east of the crossing, and obstructed the view so that the train going west had not come in sight, yet the court's action in directing a verdict was proper for another reason. The smoke was only a temporary obstruction. Appellee's engine threw out the smoke, but it was the wind and the condition of the atmosphere that caused it to come between the appellant and the east bound train approaching on the south main track. Appellant knew and observed that the wind carried the smoke away, and at the time his horse stepped on the south track the

smoke had cleared away so that he could see about one hundred feet to the east.  The train approaching was on the south main track, nearest to him.  He knew that a train could and did run west on that track while trains were going east on the other track.  He was thoroughly familiar with this crossing, and that such was the manner of operating the railroad.  He knew that he could see one-half mile to the east, except for the smoke.  He saw and knew that the wind was carrying the smoke away.  Appellee had done nothing to mislead or throw him off his guard.  Under the circumstances it was his duty to wait in a place of safety until he could see and hear, and thus with reasonable certainty ascertain that no west bound train was approaching on the south track.

If the obstruction had been of a permanent character, the question would be a different one, but here the smoke was, as he knew, but a temporary obstruction, and if he had but waited a few moments he could have seen the approaching train and avoided the injury.

The case of *Heaney* v. *Long Island R. W. Co.*, *supra*, is similar in this respect to this case.  In that case the railroad had two main tracks, the same as in this case, the accident occurred on Atlantic avenue in the city of Brooklyn, a street which, for some distance, runs east and west.  The deceased left his house, which was on the avenue, about six o'clock in the morning and started to cross the railroad tracks at that point.  The morning was cloudy and rainy or drizzly.  A train had just passed on the south track, which was nearest the deceased, and the smoke from the engine settled down behind it upon the road sufficient to temporarily obscure objects in the line of vision.  The deceased, however, went ahead, and while upon the north track was struck by the north bound train and killed.  Concerning the

decedent's contributory negligence the court said : "But we think from the proofs that the intestate was, as matter of law, guilty of negligence * * which contributed to the accident. According to the plaintiff's evidence, the deceased, after entering * * upon the defendant's track, went straight ahead, regardless of the smoke which was between him and the track on which he was struck. * * * We think it was unquestionably his duty to await the disappearance of the smoke, and thus be reasonably sure that he had a clear crossing. * * We think it perfectly clear · * * that the deceased voluntarily went upon the tracks, always a situation involving peril and calling for the vigilant exercise and use of one's senses, when the clouds of smoke made or tended to make objects indistinguishable. Where a person voluntarily places himself in a position of peril, under circumstances which render him less able to protect himself by the use of his senses, he cannot fairly be deemed competent to complain of the consequent injury as due wholly to the acts of the other party. The plaintiff's proofs leave no other conclusion possible than that the deceased had failed to observe those usual precautions which the law requires of those who approach a place of peril. They must be on the alert and vigilant in the use of their eyes and ears, and display that prudence of conduct which the situation dictates."

It was held in *Foran* v. *New York, etc., R. R. Co., supra,* that when one drives on a railroad crossing when the smoke, which has suddenly descended from a neighboring factory, obscures the view which he would otherwise have had of an approaching train, he cannot recover for an injury from a collision with the train ; that, as the traveler could have seen the train if it had not been for the smoke, in such case it was his duty to wait until

the smoke had lifted, so that he could see that it was safe to make the crossing. The court said: "It seems to us, from the whole of the evidence, that the plaintiff received his injuries through the careless, not to say reckless effort, which he made in passing upon the tracks of the defendant while the smoke obscured his vision. The first track which was approached by the driver was the easternmost track, and it was the second track upon which the train was approaching. The plaintiff himself testified that he could not see on account of the smoke, and that what prevented his seeing the train was the trees and smoke.  \*  \*  \*  Where smoke obscured the approach of a train, it was the duty of a passer-by to wait until the smoke had lifted, so that he can see that it was safe for him to make the crossing."

The case of *Whalen* v. *New York Central R. R. Co.*, *supra*, decided by the supreme court of New York, general term, was an action to recover for injuries received at a crossing. It appeared in that case that when plaintiff approached defendant's tracks on a dark evening, a freight train was passing eastward on one of the tracks. After the freight train had passed, plaintiff attempted to cross, but was struck by an east bound passenger train as soon as she stepped on the first track.

The headlight of the passenger train was burning, and the view of the track was not obstructed. Plaintiff testified that she was prevented from seeing the approaching passenger train by the smoke from the engine of the freight train. It was held that she was guilty of contributory negligence as a matter of law. The court said: "Either the engine by which she was struck was in plain sight when she stepped upon the track, or it was obscured by a cloud of smoke, and it was negligence on her part to attempt the crossing

until the smoke should be so far dissipated as to enable her to see whether an engine was close upon her. * * We think the defendant was entitled to a nonsuit on the ground of contributory negligence of the plaintiff."

In *McCrory, Admx., etc.*, v. *Chicago, etc., R. W. Co., supra,* a verdict was directed for the defendant. The court said:

"There is but one question to be determined. The railroad company was clearly negligent, not merely in violating the ordinance by an excessive rate of speed, but also in approaching this crossing without signals. The only question is whether the deceased is guilty of contributory negligence. * * * He could see in either direction. A freight train was approaching from the east, and its rumble and roar, and perhaps its whistle, attracted his attention; and coming from the west was a passenger train. There was nothing to obstruct the vision towards the west except the matter of smoke. If he had looked, there being no smoke in the way, he must have seen the train, and there cannot be a shadow of a question but that he would have been guilty of contributory negligence, thus approaching the track without noticing it. Does this question of the smoke change the case? We must remember that he was familiar with the track, because he had crossed it daily during the two months prior thereto. He must have known that there were two tracks, and that a train was liable to come on each track; and if, when approaching a track, he finds anything which temporarily obstructs his vision, it is his duty to wait until the temporary obstruction is removed. He cannot say, 'There is something temporarily obstructing my vision, but I will take it for granted that there is no danger,' and undertake to cross the track. * * * If he came to the track and found the air full of smoke, and could not

see, or, if able to see, he did not look, then, and in either case, he is guilty of contributory negligence. So, whether he could see and did not look, or could not have seen·and did not wait until that obstruction had passed away, is immaterial, one or the other must have been true, and in either event he is guilty of contributory negligence. The law lays it down clearly that a man must look and listen. And if, by looking and listening, he could ascertain the approach of a train, and fails to do so, he is guilty of contributory negligence, and cannot recover."

This case is cited and approved by the supreme court of Massachusetts in *Fletcher* v. *Fitchburg R. R. Co.*, *supra.*

In *Marty* v. *Chicago, etc., R. W. Co.*, *supra*, it was held that when a highway crosses a double track railway over which trains are liable to run frequently in opposite directions, it is contributory negligence for a traveler thereon, whose view of the second track is obscured by the presence of a passing train on the track nearest to him, to pass immediately upon the crossing as soon as the way is clear, without waiting to look or listen for the approach of a train in the opposite direction. The court said : "The plaintiff was familiar with the situation and the danger, and it is quite clear * * that there is no reason why a man should be caught at this crossing if he uses care and chooses to look. A trifling delay would have enabled him to look, and this precaution was the more important because the noise of the passing freight train would prevent him from hearing the approach of the other train. The evidence is clear, not conflicting, and the facts not complicated, and the case was properly passed on by the court without submitting it to the jury."

It follows then that whether appellant could have

seen before the smoke obscured his view, and did not look, or seeing, did not heed what he saw, or could not have seen, and did not wait until the smoke had passed away, is not material; one or the other must be true, and in any view of the case he was as a matter of law guilty of contributory negligence, and it was the duty of the court to direct the jury to find for appellee.

There is no error in the record.

Judgment affirmed.