HERBERT GODDARD, etc., v. STATE.

196 So. 596
En Banc
Opinion Filed May 21, 1940
Rehearing Denied June 20, 1940

*J. W. Salisbury,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, and *Phil O'Connell,* State Attorney, for Defendant in Error.

BUFORD, J.—Writ of error brings for review judgment of conviction of murder in the first degree without recommendation to mercy.

The plaintiff in error presents for our consideration nine (9) questions, stated as follows:

"Question No. 1. Is the verdict of the jury in this cause of murder in the first degree supported by the evidence adduced at the trial and by the instructions or charge of the court?"

"Question No. 2. Was it not reversible error for the court to charge the jury under the evidence adduced at the trial that the unlawful killing of a human being when committed in the perpetration of or in the attempt to perpetrate any rape was murder in the first degree in view of the fact that the evidence herein showed beyond a reasonable doubt that the alleged raping of the deceased by the defendant took place hours before the actual killing of the deceased?"

"Question No. 3. Was it not highly prejudicial to this

defendant and reversible error, for the court to admit into evidence over the objection of the defendant State's Exhibit No. 1, to-wit: a lock of hair which had not been properly identified and could serve only to prejudice the minds of the jurors against this defendant?"

"Question No. 4. Was it not reversible error and highly prejudicial to this defendant for the court to refuse to instruct the jury upon motion of the defendant to disregard a remark by the State Attorney during the selection of the jury and within the hearing of all jurors summoned for the trial of this case that 'brutality was evidence of premeditation'?"

"Question No. 5. Was it not reversible error and highly prejudicial to this defendant for the court to permit the solicitor for the State to argue to the jury that this defendant was a 'low down scoundrel' and 'skunk'; that 'At no time has there ever been an ounce of remorse in the no-good black heart of that scoundrel' that 'He ran all over the county with a woman he wasn't married to under an assumed name;' that 'he had five, six, seven or ten or fifty names'; that 'He is the biggest beastial, I would like to say what I am thinking'; * * * 'What a shiek he thinks he is'; that 'On an occasion of this sort sometimes our duty becomes a sort of a duty that makes a man's heart feel that that sort of a duty is once in a life time, that that duty comes to him to do a public service, in fact it is a distinct privilege in this case.' 'So it will go out to the nation at large and Palm Beach County that when a man violates little girls like this man has done he should suffer the extreme extent of the penalty of the law'; that 'The deeds of his life, his many escapes from the toils of the law has caused him to believe that the law protects me, if they send me to jail I can get loose, what do I care about that? I have been there before,

been there lots of times, will be there again if you let me out this time'; also, 'Gentlemen, you have the right to return a verdict rewarding him with the extreme penalty. If you don't the courts of Palm Beach and Florida are disgraced before the entire United States at large and you and all of us would feel justly ashamed of ourselves that a man of this sort should go to jail and that alone.' Also 'Every one of you are not offering protection to your own daughters and your own children that they should have'; further that you twelve men have got to stand up and say that can't happen in Palm Beach County, that the people don't have to take the law in their own hands and lynch such a man as that skunk over there'; also, 'if I make up my mind to take Frances' life as he did, that is sufficient premeditation, as the court will charge you'; also 'Palm Beach County, the State of Florida, and the whole United States is looking upon this particular case with a great deal of interest. They would like to know whether or not a man can come here out of the State, a renegade or a deserter, or whatever you may call it, at least a parole violator from Colorado with the F. B. I. looking for him with him knowing he had nowhere to turn, if he is apprehended he will be sent back to jail'; and 'we sincerely hope you will come back into this court room very shortly and give the verdict that everybody wants you to do, that everybody feels is fair'; and finally, 'So if you didn't lynch him, as Mr. Salisbury says was threatened to be done, that isn't necessary in Florida, the law will do it as it is justified,' when said argument was not supported by the evidence and was designated solely to excite the passions and influence the minds of the jury and prejudice them against this defendant?

"Question No. 6. Was it not reversible error for the court to refuse to give defendant's requested charge No. 1

in the language following, to-wit: 'You are instructed, gentlemen, that although the law does not require premeditation or deliberation for any particular length of time to show a premeditation or an intent to kill, it must be a sufficient length of time to enable the slayer to form a distinct and conscious intent to kill; unless you believe from the evidence in this case, beyond any reasonable doubt, that the defendant had a sufficient time to form premeditated design to kill the deceased, or that the killing was in the perpetration of or attempt to perpetrate rape, then you cannot under the law find the defendant guilty of murder in the first degree, and you must by your verdict reduce the grade of the homicide accordingly,' when said charge was supported by the evidence?"

"Question No. 7. Was it not reversible error for the court to refuse to give defendant's requested charge No. 3 in the language following, to-wit:

" 'The court instructs you, gentlemen, that something more than mere intention to kill must be shown to establish premeditation; before you can convict the defendant of murder in the first degree, you must be satisfied from the evidence beyond a reasonable doubt that the defendant not only had an intention to kill the deceased, but that he actually had a premeditated design to kill her,' when said charge was supported by the evidence?"

"Question No. 8. Was it not reversible error for the court to refuse to give defendant's requested charge No. 15, in the language following, to-wit:

" 'You are instructed, gentlemen, that although under the law of this State, the unlawful killing of a human being when committed in the perpetration of or in the attempt to perpetrate rape is murder in the first degree, such unlawful killing must be established beyond a reasonable doubt to

34

have taken place during the commission or attempt to commit rape, and should it appear from the evidence that the defendant raped Frances Dunn prior to the actual killing, this fact alone does not make the killing murder in the first degree,' when said charge was supported by the evidence?"

"Question No. 9. Was it not reversible error for the court to refuse to give defendant's requested charge No. 18 in the language following, to-wit:

" 'You are instructed, gentlemen, that proof of the brutal or revolting killing of Frances Dunn by the defendant but without any premeditated design to effect her death prior to such brutal or revolting acts cannot constitute the defendant guilty of murder in the first degree no matter how brutal or revolting the circumstances of the killing might be unless you are satisfied beyond a reasonable doubt that the defendant had entertained in his mind a premeditated design to affect her death prior to the commission of the acts which caused her death, you cannot find him guilty of murder in the first degree under the law,' when said charge was supported by the evidence?"

It could serve no useful purpose for us to detail the revolting facts disclosed by the transcript of the record of the evidence in this case. It is sufficient to say that there was substantial evidence to support the verdict of murder in the first degree because the evidence is sufficient to warrant the conclusion by the jury beyond a reasonable doubt that the unlawful homicide was committed both of and from a premeditated design to effect the death of the person killed and also that the murder was perpetrated in an attempt to commit the crime of rape.

So the first question must be answered in the affirmative.

The second question must be answered in the negative because while the evidence was sufficient to show that the

accused had perpetrated rape, or had attempted to perpetrate rape, on the deceased several hours before the homicide, it is also sufficient to warrant the conclusion that a second such assault was made at the time of the homicide.

In considering the third question we must take into consideration and apply the provisions of Section 2812 R. G. S., 4499 C. G. L. which is as follows:

"No judgment shall be set aside or reversed, or new trial granted by any court of the State of Florida in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed."

It does not appear that the error complained of on which this question is based resulted in a miscarriage of justice. The evidence was merely cumulative and while the lock of hair referred to was not properly identified, the error in its admission was harmless, as heretofore stated, the evidence of the defendant's guilt of murder in the first degree was so convincing as to preclude an acquittal and to require a conviction of murder in the first degree.

What we have said in regard to question number three is applicable to question number four.

We will pass, for the present, question number five.

Questions numbered 6, 7 and 8 must be answered in the negative because we find the record amply sustains the giving of the charge complained of and because the charges refused were amply covered by the general charge of the court.

The legal principal sought to be given to the jury in the instruction which was refused and is quoted in Question No.

9, was fully covered in the general charge and, therefore, the refusal to give the same was not reversible error.

We now return to Question No. 5. The record shows that the remarks complained of in that question as stated were indulged in by the State's Attorney during his argument to the jury. No objection was made at the time. That, however, is not an essential prerequisite to have such a matter considered by the appellate court as ground for reversal. The well-established rule is that counsel should be restrained by the court of its own motion from indulging in appeals to sympathy, or passion or prejudice in cases where the feelings may be easily aroused. It is also held that any remark made by counsel in his argument calculated to arouse passion or prejudice may warrant reversal and will do so in a close case. See Brickwood's Sacket on Instructions to Juries, 3rd Ed., Vol. 1, page 180-181; Ivey v. State, 113 Ga. 1062, 39 S. E. 423, 54 L. R. A. 959; Davis v. State, 138 Ind. 11, 37 N. E. 397; Moulton v. State, 199 Ala. 411, 74 Sou. 454; Tennehill v. State, 159 Ala. 51, 48 Sou. 662; Henderson v. State, 94 Fla. 318, 113 So. 689; Butler v. State, 94 Fla. 163, 113 Sou. 699; McCall v. State, 120 Fla. 707, 163 Sou. 38; Berger v. United States, 35 Sup. Ct. 629 and 633; Deas v. State, 119 Fla. 839, 161 Sou. 729.

In the latter case we said:

"When it is made to appear that a prosecuting officer has over-stepped the bounds of that propriety and fairness which should characterize the conduct of a State's counsel in the prosecution of a criminal case, or where a prosecuting attorney's argument to the jury is undignified and intemperate, and contains aspersions, improper insinuations, and assertions of matters not in evidence, or consists of an appeal to prejudice or sympathy calculated to unduly influence a trial jury, the trial judge should not only sustain

an objection at the time, to such improper conduct when objection is offered, but should so affirmatively rebuke the offending prosecuting officer as to impress upon the jury the gross impropriety of being influenced by improper arguments.

"It is pertinent to quote in this connection a recent decision of the United States Supreme Court on this subject, taken from the case of Berger v. United States, 295 U. S. 78, 55 Sup. Ct. Rep. 629, 79 L. Ed. 1314, wherein the Federal Supreme Court reversed a conviction saying:

" 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor, indeed, he should do so. But, while he may strike blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

" 'It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. The court below said that the case against Berger was not strong; and from a careful examination of the record we agree. Indeed, the case against

Berger, who was convicted only of conspiracy and not of any substantive offense as were other defendants, we think may properly be characterized as weak—depending as it did, upon the testimony of Katz, an accomplice with a long criminal record.

" 'In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence. If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt *overwhelming,* a different conclusion might be reached. Compare: Fitter v. United States, 258 Fed. 573; Johnson v. United States, 215 Fed. 679; People v. Malkin, 250 N. Y. 185, 201, 202; State of Iowa v. Roscum, 119 Iowa 330, 333. Moreover, we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequental. A new trial must be awarded. Compare N. Y. Central R. R. Co. v. Johnson, 279 U. S. 310, 316-318.' "

If it were not for the existence of other facts in the record, we would be compelled to enter a judgment of reversal. One of those facts is that this is not a close case on the question of guilt of the defendant of the crime of murder in the first degree. But·this fact standing alone might not be sufficient to warrant our holding that the remarks indulged in by the State's Attorney so complained of do not require a reversal. The further facts apparent from the record, and which must be considered in this connection are, that although the evidence was conclusive, the jury retired and deliberated upon their verdict for several hours and then asked to be returned to the court room for the purpose of having read to them the stenographic notes of the defendant's

testimony. The request was granted. The trial judge had the court reporter to read from the stenographic notes the testimony given by the defendant. The jury then asked that they have read to them the stenographic notes of the testimony given by the physician who made a post-mortem examination of the deceased. The jury then asked the judge other questions which we think showed conclusively that the jury in its deliberations was not being influenced by the improper remarks made by the State's Attorney, was not being influenced by passion, prejudice or sympathy, but that regardless of such remarks so made by the State's Attorney, they were performing their duty in compliance with the terms and the spirit of the oath which they had taken; that they were deliberating fairly and impartially with a laudable desire to arrive at a righteous verdict based upon the evidence and the law and without reference to any other matter.

After having heard the testimony requested read, they returned to the jury room and deliberated for a considerable time thereafter. They then returned the verdict of guilty of murder in the first degree without recommendation to mercy. The trial jury was polled and each member of the jury solemnly declared the same to be his verdict.

Another fact is that in the motion for new trial counsel for defendants brought to the attention of the court the improper remarks of the State's Attorney and in overruling the motion for a new trial the eminent jurist put his views in writing and caused them to be filed in the record. In that document he said:

"Two principal grounds are urged by the defense: first, alleged prejudicial remarks of the State Attorney in his address to the jury; and second, the insufficiency of the evidence.

"My duty now is not to pass upon the propriety of the

remarks of the State Attorney, nor to express any approval or disapproval of his remarks, or any remarks of counsel for the defense. My duty is to determine, in the light of the entire record as unfolded in the court, whether the remarks of the State Attorney, to which no objection or protest was made until the filing of the motion for new trial, were of such character that neither rebuke nor retraction might entirely destroy their alleged sinister influence. Did these remarks result in a prejudicial impairment of the fundamental rights of the defendant, so that the verdict was incited by passion and prejudice, rather than a dispassionate and impartial consideration of the evidence in the light of the law?

"Much of the argument of the State Attorney was prompted by the openng remarks of counsel for the defendant. Viewing the trial in retrospect, I am satisfied that counsel for the defendant, who attentively listened to the remarks of the State Attorney, then thought there was no impropriety or prejudice in their utterance, or else he would have made some protest or objection. I am inclined to this belief, because counsel for the defendant, in a very forceful closing argument, repeated many of these remarks of the State Attorney, pointed out clearly to the jury that such remarks had no bearing upon the question of the existence of a premeditated design, or guilt of the defendant under either phase of the charge of murder in the first degree. As a matter of fact, the alleged objectionable remarks, instead of having a sinister influence, properly and probably had a result quite to the contrary. This conclusion is confirmed because of the fact that the jury deliberated many hours. It asked for a reading of the evidence and a further charge of the law, only on the precise points urged by the defense, rather than matters suggested by the State Attorney.

"During the trial, I made fairly complete notes. Had I felt, or had counsel for the defendant felt, that there was any prejudice in the remarks of the State Attorney, or the happenings of the trial, I am sure some action would have been taken. Certainly, the absence of a technical objection on the part of counsel for the defense would not in the slightest warrant me in denying this motion for new trial, if any of the fundamental rights of the defendant had been impaired or prejudiced or if I thought the verdict was not the result of an entirely fair trial. On the other hand, remarks technically objectionable would not warrant me in granting the motion for new trial, unless they were of such a character that neither rebuke nor retraction might entirely destroy their sinister influence.

"Knowing counsel for the defense, and knowing something about my own actions, I am sure any possible sinister influence of these remarks could have been, and would have been, destroyed, had there been any desire on the part of counsel to do so.

"Concerning the sufficiency of the evidence, I feel no useful purpose would be served by me in delineating that evidence. Suffice to say that this is a case that is not of the doubtful or questionable character. It is unlikely that any impartial person could have heard the witnesses testify in this case, noted their demeanor on the stand, examined the evidence admitted at the trial, viewed the remote scene of the homicide and considered all these matters under the charge of the court, without arriving at the conclusion beyond a question of doubt, that the defendant was not only guilty of murder in the first degree, but that the premeditated design was clear and of a very persistent, determined and obvious nature. I think the evidence is compelling conclusive."

In the light of the record, we think it is clearly shown that no injustice prevailed; that no reversible error has occurred; that the verdict was the result of fair, cool, deliberate and impartial consideration and of all the evidence adduced upon the trial and was not the result of improper influence or unwarranted argument indulged in by counsel.

We are constrained to say, however, that the record in this case should be a warning to prosecuting officers that trials should be conducted coolly and fairly, without the indulgence in abusive or inflammatory statements made in the presence of the jury by the prosecuting officer. That it must be realized that the most corrupt and hardened criminal is entitled to have the constitutional benefit of the same sort of a fair and impartial trial as has a first offender of previous good character. That every defendant is presumed to be innocent until the *evidence* adduced shows him beyond a reasonable doubt to be guilty of the specific crime then charged against him. That it is as much the duty of the prosecuting officer to discharge the innocent as it is to convict the guilty and that no conviction is warranted except upon convincing evidence fully and fairly presented. That the prosecuting officer is a *quasi* judicial one and that his duty to the citizen charged with crime is as sacred as is his duty to the State.

The judgment should be affirmed and it is so ordered.

Affirmed.

TERRELL, WHITFIELD and CHAPMAN, J. J., concur.

BROWN and THOMAS, J. J., agree to conclusion.