PER CURIAM.
This is an appeal from a judgment of conviction and sentence to imprisonment for the crime of rape. This case arose out of the same circumstances involved in the DeLaine et al. v. State, 230 So.2d 168, opinion filed January 9, 1970, and appellant was a co-defendant in the trial in the lower Court. The judgment and sentence appealed here is affirmed on authority of the DeLaine et al. case, as supplemented by the authorities hereinafter cited.
Defendant Brown adopted all the points argued in his co-defendants’ appeal and raises four additional points which will be treated seriatim.
Brown was not arrested along with the other six defendants on the premises where the alleged crime occurred, but was arrested approximately eleven hours later, shortly after midnight on the morning after the incident took place. There was a “pickup” out on him, but the arresting officer had no warrant for his arrest.
Point 1. Defendant contends that he was deprived of his fundamental right to a fair trial because an exculpatory statement, which he claims was made by him to the arresting officer, was not furnished to him by the State upon timely motion for production of said statement. The order granting said motion was entered on April 3, 1967.
At a bench conference the trial Judge said that counsel for the State had assured him on several occasions that they knew of no such statements. Counsel for defendant stated that the defendant would testify that the police department did take a statement from him and that he signed *179 it, but that he did not know the name of the police officer who took the statement. The trial Court suggested that if the police officer who allegedly took the statement appeared, defendant should immediately let the Court know and the Court would stop the proceedings right there and inquire into the matter. He also offered to let defense counsel take the defendant in the witness room to see if he could identify the officer.
Defendant did not testify at the trial, nor did he question any of the police officers who testified for the State relative to the alleged statement. The State did not produce such a statement and therefore there was no evidence before the Court that such a statement existed.
Defendant further claims that it was necessary that the defense have said statement prior to trial in order to prepare for cross-examination of certain state witnesses.
As was stated in Barton v. State, Fla.App.1966, 193 So.2d 618:
“The deliberate destruction, concealment, or suppression of material evidence by the State would impair the constitutional rights of an accused. The record is completely void of any such illegal activity on the part of the State, and a bald statement that ‘material evidence has, in fact, been suppressed’ without supporting facts is insufficient.”
Defendant has failed to show that the withholding of his statement, if indeed there was such a statement, hindered him in the preparation of his defense.
Point 2. Defendant questions the sufficiency of the evidence to support his conviction.
Defendant was not arrested on the premises with the six other defendants and he claims that there was no direct testimony linking him to the alleged crime. He therefore contends that his conviction must be based upon circumstantial evidence and cites cases to support his claim that such evidence must be of a conclusive nature.
This contention is not supported by the record, however. The prosecutrix testified that she knew defendant prior to the incident and that even though defendant had a white scarf across part of his face at the time he assaulted her, she knew him and testified: “I did not think he was Jesse Brown. I knew who he was.”
We also believe that the jury was warranted in not accepting Brown’s alibi. Officer Kapocsi of the police department testified that he first received the report at 1:13 P.M. that a colored female was being assaulted by a group of colored males, and he arrived at the scene of the crime approximately four or five minutes later. Defense witness McNorton testified that he was working at the clinic at Gibbs High School at the time of the alleged rape; that Jesse Brown came in about 1:30 P.M. on the day in question and said his tooth was hurting. He asked Brown what time he wanted to be put down in the log as having gotten there and defendant told him 1:00 o'clock. Defendant remained lying down in the clinic from 1:30 until school was out about 3:00 P.M.
The premises where the incident occurred at 13th Avenue and 25th Street were only a short distance from Gibbs High School, which was located at 9th Avenue and 31st Street according to the testimony of the prosecutrix.
According to the physical facts, Brown could easily have committed the crime and then returned to the school at 1:30.
We therefore conclude that this appeal point is without merit and must be rejected.
Point 3. Defendant’s third point relates to information elicited by the prosecutor regarding what Brown terms “the illegitimacy of the defendant.”
*180 During cross-examination of the defense witness McElroy, the prosecutor asked:
“Q. Did you see — who is that fellow who lives across the street from Mr. Knight, from Knight? Mr. Collins do you know Frank Collins?
A. Yes, I do.
Q. He is Jesse Brown’s father, isn’t he?
A. 'That’s what—
Q. He is Jesse Brown’s father isn’t he?
A. That’s what I understand.”
Defense counsel immediately objected on the grounds that counsel was testifying and that it was hearsay information.
Defendant contends that this information was elicited solely for the purpose of discrediting Jesse Brown by impressing upon the jury’s mind that Jesse Brown is illegitimate and that his own father was a witness against him. Defendant claims that this deprived him of his right to a fair trial.
Frank Collins had testified for the State that he saw Irving Knight, one of the defendants, pulling the prosecutrix by the arm down the street and when they got to the door he unlocked it and pushed her in. The witness McElroy testified that he saw Knight and the prosecutrix walking along the street just normally towards Knight’s house. This testimony was evidently produced for the purpose of discrediting the testimony of Frank Collins, as well as that of the prosecutrix.
The Court, in overruling the objection to the testimony in regard to Jesse Brown’s father, said:
“I think it probably bears on the question of credibility of the witness, and he has a right to lay a predicate.”
In the prosecutor’s closing argument he mentioned that Frank Collins is allegedly the father of Jesse Brown, the defendant here. Again defense counsel objected on the ground that it was not in the record, and the Court said:
“Well, I think the jury will recall that Mr. Allweiss asked a witness if— whether or not that witness knew or understood him to be Jesse Brown’s father. * * *
“The jury will recall whether the question was, in fact, answered. I will say now if there was no answer to that question, then the jury shall disregard this question. The mere question by Mr. Allweiss would not constitute evidence of that fact to either of them. I am sure you would not permit that to interfere or influence you, or for that matter, enter into their deliberations.”
Defense counsel moved for a mistrial, stating that even though the Court had done what it could to perhaps erase the prejudicial effect, he did not believe that it would be sufficient. This motion was denied.
In the case of Casso v. State, Fla.App.1966, 182 So.2d 252, cert. den. Fla., 192 So.2d 487, this Court said:
“It is elementary that it is not every error that may be committed in the trial of a criminal case that will provide the basis for a reversal of the judgment; such error must be fundamental and prejudicial. Section 924.33, Florida Statutes, F.S.A., provides as follows:
‘No judgment shall be reversed unless the appellate court after an examination of all the appeal papers is of the opinion that error was commit-ed which injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.’
*181 “Citing such statutory provision, the Supreme Court of Florida in Cornelius v. State, Fla.1950, 49 So.2d 332, said:
‘This Court has specifically held that a reversal should not be ordered unless the error complained of was prejudicial or harmful to the substantial rights of the accused and that the introduction of improper or inadmissible evidence must be prejudicial in order to warrdnt a reversal.’
“Applying the foregoing tests to the instant case, it cannot be said that the remarks of the State Attorney to the jury, supra, were so damning and inflammatory as to vitiate the verdict of conviction rendered by the jury, especially in the light of the prompt actions of the trial Judge and of the prosecuting attorney immediately after said remarks were made.”
There was no mention of the word illegitimate, and the remarks were certainly not damning and inflammatory. We do not think that these remarks were so prejudicial as to require reversal. See Goddard v. State, 1940, 143 Fla. 28, 196 So. 596, and Tribue v. State, Fla.App.1958, 106 So.2d 630.
Point 4. Defendant claims that his motion to suppress the evidence should have been granted on the ground that it was acquired as a result of an unlawful arrest, search and seizure. He contends that the arrest was made without probable cause and without a warrant.
The arresting officer, Primus Killen, testified that he had been informed of the crime by his check-on sergeant, and that there was a “pick-up” on Jesse Brown. He did not have an arrest warrant at the time of the arrest and did not know whether a warrant had been issued for Jesse Brown. He knew Jesse Brown beforehand so he knew who he was looking for. He arrested Jesse Brown, for rape, on the street at 8th Avenue and 23rd Street between 12:00 and 1:00 o’clock, or shortly after midnight, on the morning of January 13, 1967, the day after the incident.
It is clear from the evidence that Officer Killen had reasonable ground to believe that a felony had been committed and reasonable ground to believe that the person to be arrested had committed it.
Defendant cites Carter v. State, Fla.App.1967, 199 So.2d 324, to support his contention that the officer had reasonable time to obtain an arrest warrant. In that case this Court said:
“Where an arrest or search is made by an officer without a warrant, the State must be prepared to show * * * that the officer or officers had no reasonable opportunity to previously apply for and be issued an arrest or search warrant; otherwise the evidence as to the fruits of the search goes out.”
But the Court went on to say:
“Bear in mind, we say ‘no reasonable opportunity to previously apply’ for such warrant. This still leaves the way open for an arrest or search absent a warrant where the exigencies of the situation render it impossible or reasonably impracticable to apply for the warrant.”
The evidence in the case sub judice shows that the arresting officer did not have a reasonable opportunity at that time of night to locate a magistrate or judicial officer and have an arrest warrant issued by him. See Casso v. State, Fla.App.1966, 182 So.2d 252, 256. Jesse Brown was apprehended on the street, not in his home, around midnight, and the arresting officer had no assurance that he could locate Jesse Brown again if he went in search of a magistrate or judicial officer.
The question of whether an arrest is valid so as to support an incidental search is a mixed question of law and fact for the Court to determine. Brown v. State, Fla.1950, 46 So.2d 479; Urso v. State, Fla. *182 App.1961, 134 So.2d 810; Diaz v. State, Fla.App.1965, 181 So.2d 351; Casso v. State, supra; Echols v. State, Fla.App.1967, 201 So.2d 89.
As an incident to an arrest made under these conditions, it is the power and the duty of the arresting officer to search the person so arrested and seize anything found on his person or in his possession or control tending to show that the person is guilty of a violation of a law. See Brown v. State, supra; Casso v. State, supra; Bozeman v. State, Fla.App.1958, 102 So.2d 648.
We hold that the trial Judge was correct in denying the objections to admission, into evidence of Jesse Brown’s clothing. See also Porter v. State, Fla.App.1968, 214 So.2d 73.
The judgment appealed from is affirmed.
LILES, Acting C. J., and PIERCE and MANN, JJ., concur.