616 So.2d 73 (1993)
STATE of Florida, Petitioner,
v.
William LOZANO, Respondent.
No. 93-684.
District Court of Appeal of Florida, First District.
March 10, 1993.
Robert A. Butterworth, Atty. Gen., Janet Reno, State Atty. for Eleventh Judicial Circuit, and Richard L. Shiffrin, Sp. Asst. Atty. Gen., for petitioner.
Roy Black, Black & Furci, Miami, for respondent.
PER CURIAM.
This case serves to remind us that under our constitution, we are governed by rules that ensure a fair trial. The State of Florida petitions this court for a writ of certiorari *74 to review a non-final order of the Circuit Court for Leon County which denied the defendant's motion for change of venue, a motion in which the State had joined. We grant the petition.
William Lozano is Hispanic and of Colombian descent. While on duty as a City of Miami police officer, he shot and killed the Black driver of a motorcycle who was attempting to avoid a stop for a traffic infraction. A passenger on the motorcycle, also a Black male, died from injuries from the resulting crash of the motorcycle. Serious civil disturbances immediately followed in Dade County.
Subsequently, Lozano was tried and convicted of two counts of manslaughter. On appeal, the District Court of Appeal for the Third District found that the trial court had committed reversible error when it denied the defendant's motion for change of venue. The defense had sought the change on the theory that jurors would be reluctant to vote for acquittal for fear of causing further violence in the community. The court reversed and remanded for a new trial in another venue. Lozano v. State, 584 So.2d 19 (Fla. 3d DCA 1991), review denied, 595 So.2d 558 (Fla. 1992).
After a hearing, Lozano's trial was moved to Orlando in the Ninth Judicial Circuit by Judge W. Thomas Spencer. Later, however, by order dated May 6, 1992, Judge Spencer moved the trial to Tallahassee, Leon County, in the Second Judicial Circuit, on his own motion without notice and without a hearing. A copy of the May 6, 1992 order (omitting footnotes) is included in this opinion as Appendix "A." Chief Judge William Gary of the Second Circuit entered an order which returned the case to Orlando, but the State's challenge to Judge Gary's order on jurisdictional grounds was upheld and the trial remained scheduled for Tallahassee. State v. Gary, 609 So.2d 1291 (Fla. 1992).
Lozano then moved the trial court for another change of venue, arguing that his rights of equal protection and to a fair trial would be violated by trial in Leon County, which has a very small Hispanic population. He also argued that an impartial verdict was impossible in Tallahassee, as in Dade County, because of fear of racial violence. Movant made additional arguments for venue change based on pre-trial publicity and the alleged procedural deficiencies involved in the issuance of the order which moved the trial from Orlando to Tallahassee. The only issue raised by the State and properly before this court for determination concerns the validity of the reasons stated by the trial court in determining that the trial should be moved from Orlando to Tallahassee.
After the trial court took evidence and heard argument on the motion for change of venue, the State joined in the motion insofar as the defendant contended Leon County was not a proper venue because of its small Hispanic population and because Tallahassee was selected as the site for the trial solely upon racially-based reasons.[3] Despite this joinder, Judge Spencer denied the motion. The State petitioned for writ of certiorari and moved for a stay. We granted the stay and, after considering the pleadings and arguments of the parties, we grant certiorari.
In civil proceedings, non-final orders which concern venue are appealable pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(A). No corresponding right of interlocutory appeal exists in criminal cases, but the State may seek review by petition for writ of certiorari. State v. Pettis, 520 So.2d 250 (Fla. 1988). In order to obtain relief, petitioner must demonstrate that the order to be reviewed departs from the essential requirements of law and causes material injury to the petitioner throughout the proceedings below, leaving no adequate remedy on appeal from final order. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla. 1987). Additionally, a petition for writ of certiorari *75 must be filed within 30 days of rendition of the order to be reviewed, and that time limit is jurisdictional. See Fla.R.App.P. 9.100(c)(1); Hofer v. Gil De Rubio, 409 So.2d 527 (Fla. 5th DCA 1982).
Initially, we were concerned that our jurisdiction had not been timely invoked, as petitioner, in effect, challenges the May, 1992, order which moved the trial from Orlando to Tallahassee. While the respondent did file objections challenging the trial court's order in the summer of 1992, the State's challenge to the order was not presented to the trial court until March 5, 1993, and the petition for writ of certiorari was filed the same day that challenge was rejected. It may be argued that the State's challenge was untimely; we decline, however, to adopt a rule which would preclude the State from asserting at any time that continued prosecution under the circumstances would constitute a violation of the constitutional rights of a criminal defendant. We therefore conclude that the petition for writ of certiorari was timely filed.
We next address the question of whether the petitioner can show an injury which cannot be remedied on appeal from a final order. Ordinarily, the time, trouble, and expense of an unnecessary trial are not considered "irreparable injury" for these purposes, Continental Equities, Inc. v. Jacksonville Transportation Authority, 558 So.2d 154 (Fla. 1st DCA 1990). The "irreparable injury" test must be satisfied in a certiorari proceeding that arises from a criminal case, as well. See Tart v. State, 96 Fla. 77, 117 So. 698 (1928); Mingle v. State, 429 So.2d 850 (Fla. 4th DCA 1983); Smith v. State, 187 So.2d 61 (Fla. 2d DCA 1966). The Third District's reversal of Lozano's Dade County convictions shows that denial of a motion for change of venue, if erroneous, can be corrected on plenary appeal and a new trial ordered. We must determine whether the unique circumstances of this case create an exception to the rules above which would ordinarily preclude our review of Judge Spencer's order at this point in the proceedings. Petitioner argues that the irreparable harm test is met by the unnecessary expenditure of resources and the difficulties borne by the defendant, the witnesses, and other interested persons in the conduct of a second trial where reversal for a third trial is almost certain if the defendant is convicted. If this case existed in a vacuum, we would be inclined to find this argument unpersuasive, see Continental Equities. We are well aware, however, of the substantial resources of law enforcement and the judiciary which have been and no doubt will continue to be expended with regard to the State's prosecution of Lozano. We also are cognizant that both the State and the defense believe that to proceed with the trial in Leon County would be violative of the defendant's constitutional guarantees of a fair trial and equal protection and that, should a conviction result, an appeal would very likely result in a reversal with directions that a third trial be conducted.[4] In light of the intense media coverage of this case, the problems with providing Lozano a fair trial increase with each trial. Further, we are persuaded by the State's argument that it should not be required to prosecute an individual in circumstances which it believes are violative of the defendant's constitutional rights.[5] We agree that public *76 confidence in our criminal justice system cannot be maintained under such circumstances, and that either a conviction or an acquittal resulting from such a trial would be inherently suspect. We therefore conclude petitioner has satisfied the "irreparable injury" requisite to obtain certiorari relief.
We also find that petitioner has shown that Judge Spencer's order is a departure from the essential requirements of law. The May, 1992, order of transfer from Orlando to Tallahassee is clear in grounding the ruling on the basis of race, particularly the race of the victims. No consideration was given to the race of the defendant. We agree, as the parties here assert, that the trial court deliberately acted so as to increase the number of Black jurors. In doing this, the trial court virtually guaranteed the absence of Hispanic jurors. "[P]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." Batson v. Kentucky, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986). The precise question presented here is apparently a novel one, see Epps v. State, 901 F.2d 1481 (8th Cir.1990); see also Mallett v. Missouri, 494 U.S. 1009, 110 S.Ct. 1308, 108 L.Ed.2d 484 (1990) (Marshall and Brennan, JJ., dissenting with written opinion from denial of certiorari). Nevertheless, the State of Florida, as prosecuting authority, announced its determination after a full evidentiary hearing that it agreed with the defendant's claim that his constitutional rights would be violated if he stood trial in Leon County. Denial of the defendant's motion, as joined by the State at that time, was a departure from the essential requirements of law.
We grant certiorari and quash the trial court's order of March 5, 1993, which denied the motion for change of venue. We find that the effect of this disposition is to void the order of May 6, 1992, which moved the trial from Orlando to Tallahassee, and to reinstate the April 2, 1992, order which set the trial in Orlando.
PETITION GRANTED.
JOANOS, C.J., and SMITH and WOLF, JJ., concur.

APPENDIX A
 In the Circuit Court of the
 Eleventh Judicial Circuit in
 and for Dade County, Florida
 Criminal Division
 Case No. 89-02972
 State of Florida, Plaintiff,
 vs.
 William Lozano, Defendant.
 SUPPLEMENTAL ORDER ON VENUE
This court cannot ignore the national tragedy of the urban riots occurring after the Rodney King verdict on April 29, 1992. That so many of our fellow Americans feel shut out from our judicial system demands our attention.
Orlando, Florida, is no longer the proper location for the LOZANO trial.
WILLIAM LOZANO was convicted of manslaughter in December 1989. The appellate court ordered a new trial ruling that since the jury was "obviously" and "justifiably" concerned that riots might take place if they acquitted the defendant, the trial should have been moved to another locality.
This court was ordered to hold hearings on the sole question of whether a new jury would likewise be concerned with the possibility of riots if they returned a verdict of acquittal. Whether a riot would, in fact, actually have taken place is not the issue. The only question which the appellate court permits us to answer is whether a new jury would think, in the back of their minds, that a verdict of acquittal might result in riots. This court heard five days of testimony *77 in March 1992. Not only did the evidence show that the same prejudicial factors which existed prior to the first trial in 1989 continue to exist; but, since that time we have the additional influence of the gavel to gavel television coverage of the trial itself  including the sentencing and the extensive security precautions. On top of all of this we now have the terrible aftermath of the Rodney King verdict. As a new trial were to approach it would be expected that the media would review the details of this case, Miami's past civil disturbances and, now, the recent King riots.
The overwhelming evidence proved that a new jury would, correctly or incorrectly, feel the same improper outside pressures. It is unrealistic to think that any potential juror from this area would not be completely saturated with the facts of the LOZANO case and of the community's concern about civil disturbances. What greater violation of constitutional rights could there be than to require a defendant to pick his jury from a community where it is common knowledge that he was found guilty by a previous jury.
Every defendant is entitled to a neutral and dispassionate jury that can base its decision solely upon the evidence presented in the courtroom. Venue was changed to Orlando, Florida by this court's order of April 2, 1992. But this court is convinced that, rightly or wrongly, Orlando is now perceived as not providing the necessary framework for an impartial trial. Such a perception of justice is as important as its reality. The judicial system is the branch of government that must be the most sensitive to its image of impartiality.
The selection of the alternative venue location involves the weighing of multiple factors in an effort to duplicate the demographics, heterogeneity, urban consciousness and ethnicity of the home county. Dade County has no twin in this state. In our case, the victims are Black but the defendant is Hispanic. No other county comes any place near Dade's 19.8% Black voters and its 49.2% Hispanic population. Hillsborough is not appropriate because of the memories of the 1980 McDuffie trial being moved to Hillsborough and the subsequent riots that followed the acquittal by an all white jury. The next most similar county is Orange County (Orlando) with 10.1% Black voters and 9.6% Hispanic population. The 50% fewer Black voters is far outweighed by the 80% fewer Hispanics.
It makes no difference in which appellate district the trial is held. The law of manslaughter is the same in Orlando as it is in Miami. To say that the law applicable to this case changes as one moves from one county to another and passes through Florida's five appellate districts is absurd. Florida's criminal law is uniform throughout the state.
Many of the witnesses who testified before this court spoke of two other issues which America should hear. They described (1) the general feeling of alienation between the black community and the judicial system  a feeling that they are not an equal participant; and (2) a perception that the shootings of blacks by non-black policemen are handled differently than other shootings. Both concerns have been increased by the Rodney King verdict. Neither concern should exist in a free society.
This court can respond to these concerns and at the same time guarantee to the defendant his constitutional right to a fair trial before an impartial jury.
The location to which a trial is moved is a matter for the court's discretion.
There are only two large counties in the state with the percentage of Black voters equal or greater than Dade's. Duval County has 23.3% Black voters and Leon County has 20.6% Black voters. Venue for this trial will therefore be changed to our state capital, Tallahassee, Florida, in Leon County.
This court will insure [sic] that blacks will be on the jury that tries this case to the extent the law permits. State v. Slappy, 522 So.2d 18 (Fla. 1988). Peremptory challenges will be examined closely to make sure that they are not being used on a racially discriminatory basis. The court will consider granting additional challenges *78 as permitted by Fla.R.Crim.P. 3.350, to guarantee the seating of a fair jury.
The relatives of the shooting victims have rights in connection with this case. Our Florida Constitution [Art. I, Section 16(b), Fla. Const.] provides:
"Victims of crime or their lawful representatives. . . are entitled to the right to be informed, to be present, and to be heard when relevant, at all crucial stages of criminal proceedings, to the extent that these rights do not interfere with the constitutional rights of the accused."
The relatives of the victims, Clement Lloyd and Allan Blanchard are entitled to have an attorney participate in this case. The court will appoint a Black attorney for this purpose.
Justice is an elusive quality demanding constant pursuit. Its pursuit, in this case, now demands some changes in this court's order of April 2, 1992.
It is therefore Ordered and Adjudged:
1. This court's Order Changing Venue dated April 2, 1992 remains in effect other than as changed herein.
2. Venue for the trial of this case will be transferred to the Second Judicial Circuit sitting in Tallahassee, Leon County, Florida. Counsel may file written objections to this location within ten (10) days of this order.
3. The trial is hereby ordered to commence at 10:00 A.M. on Tuesday, October 6, 1992.
4. Challenges to potential jurors must be exercised on a racially neutral basis.
5. The court will entertain requests for additional peremptory challenges as permitted by law.
6. The court will appoint an attorney to represent the victims in this proceeding.
This trial presents a challenge to the precept "Justice for all." We can meet that challenge.
DONE AND ORDERED in Miami, Dade County, Florida this 6th day of May 1992.
 W. Thomas Spencer
 Circuit Judge
NOTES
[3] The State's petition and the defendant's response reveal that Leon County has an Hispanic population of 2.4% with .7% Hispanic registered voters, while Dade County has an Hispanic population of 49.22%. The trial court's May 6, 1992 order took into account only the Black population of Leon County.
[4] Presumably, the State, in an appeal by Lozano from a Leon County conviction, would be bound by its position in the trial court that the motion for change of venue should have been granted. Cf. Arnold v. Taco Properties, Inc., 427 So.2d 216, 220 (Fla. 1st DCA), review denied, 434 So.2d 886 (Fla. 1983) (party could not argue that granting motion for change of venue was reversible error where the same party specifically stated at trial that there was no objection to the change). While this court would not be bound by what would be, in effect, a confession of error, L.S. v. State, 547 So.2d 1032 (Fla. 3d DCA 1989), the likelihood of reversal is great indeed.
[5] The American Bar Association Standards of Criminal Justice Relating to the Prosecution Function (adopted by Rule 4-3.8, Florida Rules of Professional Conduct) Standard 3-1.1(b) provides, inter alia, that the prosecutor is an administrator of justice. As such, according to the Commentary, the prosecutor has an obligation "to guard the rights of the accused as well as to enforce the rights of the public." The prosecutor acts as a servant of the law. Goddard v. State, 143 Fla. 28, 196 So. 596, 600 (1940), quoting from Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). See also Frazier v. State, 294 So.2d 691, 692 (Fla. 1st DCA 1974).