622 So.2d 607 (1993)
George MARTUCCIO, O.D., Appellant,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF OPTOMETRY, Appellee.
No. 92-1535.
District Court of Appeal of Florida, First District.
August 12, 1993.
Kenneth G. Oertel of Oertel, Hoffman, Fernandez & Cole, Tallahassee, for appellant.
Kathryn L. Kazprzak, Dept. of Professional Regulation, Tallahassee, for appellee.
KAHN, Judge.
Appellant Dr. George Martuccio has sought licensure as a Florida optometrist. When he received a lower than passing grade on the clinical portion of the required licensing examination, Dr. Martuccio petitioned for a formal hearing pursuant to section 120.57, Florida Statutes. After an administrative hearing, the hearing officer assigned by the Division of Administrative Hearings recommended that the Board of Optometry (Board) issue a final order finding that Dr. Martuccio achieved a passing score on the examination. The Board, however, declined the recommendation, concluding that Dr. Martuccio did not achieve a passing score. Because the Board rejected *608 findings of fact that were supported by competent substantial evidence, we reverse and direct that a final order be entered pursuant to the recommendation of the hearing officer.
Dr. Martuccio is a graduate of a four-year course of study at the Ohio State University College of Optometry. Prior to seeking Florida licensure he qualified to practice optometry in Ohio. When Martuccio took the 1989 optometry examination in Florida, he received a passing grade on the written portion of the examination, but not on the clinical portion. The passing grade on the written examination remained valid when he sat in 1990 to be re-examined. Therefore the 1990 examination consisted only of the clinical portion. The clinical portion of the examination is divided into two sections, each involving a series of procedures performed by the candidate on subjects who serve as "patients." On the first section, Dr. Martuccio received a perfect score of 48 points. On the second section, Dr. Martuccio's score totalled only 27.5 points. Since a total grade of 80 points is required for a passing score on the clinical examination, Dr. Martuccio fell 4.5 points short and accordingly received a failing grade.
Section 2 of the examination is divided into 16 different procedures. The grading is done by two examiners who are themselves practicing optometrists. If both examiners agree on a candidate's performance, the candidate either receives no credit or full credit for a particular procedure. If the examiners disagree, the candidate is given one-half of the possible points on that procedure. In the administrative proceeding Dr. Martuccio challenged the scores he received on four of the procedures in section 2 of the 1990 clinical examination. In each of these four procedures, binocular indirect opthalmoscopy, anterior biomicroscopy 4, anterior biomicroscopy 9, and gonioscopy, the examiners disagreed and thus Dr. Martuccio received only 8.5 points out of a possible 17 points.
When the case came on for hearing, the Board did not call as expert witnesses the examiners who determined that Dr. Martuccio had failed to properly perform the four procedures in question. Instead, the agency called a practicing Florida optometrist with 15 years experience. Dr. Martuccio proffered himself as an expert in optometry. Counsel for the Board objected, stating that Dr. Martuccio should not be qualified as an expert witness since he had not passed the Florida licensing examination, and argued that "just by the nature of his having licenses in [Ohio and Pennsylvania] does not qualify him as an expert in optometry." The hearing officer accepted the tender of Dr. Martuccio as an expert.
The findings of fact entered in this case clearly demonstrate that the hearing officer relied in large degree upon Dr. Martuccio's testimony.
As to the binocular indirect opthalmoscopy, the hearing officer accepted Dr. Martuccio's testimony that the subject patient remained still during the examination process and thus concluded that one of the graders made a mistake in his evaluation that this demonstration was "out of focus." On the anterior biomicroscopy 4 examination, the applicant is required to use a slit lamp to project a beam of light into the patient's eye. One grader concluded that Dr. Martuccio erroneously projected an optic section rather than a parallelpiped from the slit lamp. Dr. Martuccio testified, however, that he did not change the adjustment on the lamp which controls the width of the beam of light. Accepting this testimony, the hearing officer decided that one of the examiners, rather than Dr. Martuccio, was mistaken. For anterior biomicroscopy 9, the applicant is required to focus on vitreous strands on the anterior vitreous of the eye. In healthy patients, such vitreous strands are not present, and the anterior vitreous will appear clear when illuminated by a beam of light from the slit lamp. The examiner who failed Dr. Martuccio on this procedure observed that vitreous strands were not visible. Dr. Martuccio explained, however, that the subject patient had a healthy eye which did not have vitreous strands. The hearing officer accepted this testimony and concluded that the examiner's comment concerning vitreous strands *609 was inappropriate, indicating he used an erroneous criterion. On the gonioscopy examination, one of the examiners commented that the structures of the eye which are examined in this procedure were out of focus. The hearing officer accepted Dr. Martuccio's testimony that the subject patient did not move, and accordingly that the structures remained in focus during the examination.
Based upon the foregoing analysis, the hearing officer recommended that Dr. Martuccio be awarded 8.5 additional points on the clinical portion and accordingly that he should achieve a passing score.
The Board of Optometry disagreed, making the following pertinent conclusions:
Petitioner's testimony ... that he properly performed the four procedures in question was only supported by Petitioner's self serving testimony and was controverted by evidence that one examiner graded the Respondent [sic] as not completing these procedures correctly. Respondent's [sic] evidence alone was not competent substantial evidence.
* * * * * *
There is no competent substantial evidence that Petitioner properly performed the four procedures in question, or that he is capable of using those instruments which he utilizes daily in his practice.... The petitioner has not shown by competent substantial evidence that an error occurred in the grading of his examination. Any error in grading, if an error occurred, has not been shown by Petitioner to be the exclusive province of the examiner in each procedure who awarded him zero points.
In effect, the Board found that despite Dr. Martuccio's background as a graduate optometrist, licensed in Ohio and Pennsylvania, and accepted by the hearing officer as an expert witness, his testimony could not serve as competent substantial evidence for the hearing officer's conclusions.
A Florida administrative agency sitting to review a recommended order from a hearing officer may not reject or modify the findings of fact contained in such recommended order unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings were not based upon competent substantial evidence. § 120.57(1)(b)10, Fla. Stat. (1991). Factual issues susceptible of ordinary methods of proof that are not infused with policy considerations are the prerogative of the hearing officer as the finder of fact. McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). It is for the hearing officer to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent substantial evidence. Heifetz v. Department of Business Regulation, Division of Alcoholic Beverages & Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985). We choose not to discard these fundamental principles of administrative law simply because the hearing officer has judged the credibility of fact and opinion testimony presented by the applicant, who has himself qualified as an expert witness.
Persons having a pecuniary or proprietary interest in the outcome of litigation are not disqualified from testifying under the Florida Evidence Code. Section 90.601, Fla. Stat. (1991); Charles W. Ehrhardt, Florida Evidence, § 601.1 (1993 Ed.). Interest merely goes to the credibility of the evidence. Id. Expert testimony may be given by a witness qualified as an expert by "knowledge, skill, experience, training, or education." Section 90.702, Fla. Stat. (1991). This court has ruled that a trial judge commits reversible error by finding that a witness, who is otherwise qualified, could not appear as an expert because he was not licensed as a psychologist in the state of Florida. Rose v. State, 506 So.2d 467 (Fla. 1st DCA), rev. denied, 513 So.2d 1063 (Fla. 1987); see also, Lee County Electric Co-operative, Inc. v. Lowe, 344 So.2d 308 (Fla. 2d DCA 1977). Neither Dr. Martuccio's personal interest in his own case, nor his lack of licensure in Florida rendered his testimony incompetent. Thus the hearing officer acted within *610 her prerogative to rely upon Dr. Martuccio's testimony as competent substantial evidence to support her conclusions. The Board, on the other hand, exceeded its statutory authority by rejecting findings of fact that were supported by competent substantial evidence.
The Board relies upon Robinson v. Florida Board of Dentistry, Department of Professional Regulation, 447 So.2d 930 (Fla. 3d DCA 1984), for the proposition that the testimony of one interested witness does not reach the level of competent substantial evidence as required by section 120.57. The Robinson case, however, arose out of a license suspension proceeding. Relying upon this court's decision in Bowling v. Department of Insurance, 394 So.2d 165 (Fla. 1st DCA 1981), the Third District noted that such a proceeding is penal in nature, and declined to uphold a suspension based solely upon the testimony of a competing professional. The court further noted the adverse witness' continuing financial interest in the case, and expressly found the witness' testimony "suspect." 447 So.2d at 932. The nature of the proceeding in Robinson differs significantly from the current case, and we do not find it controlling. Cf. Falk v. Beard, 614 So.2d 1086, 1089 (Fla. 1993) ("It would be an anomalous situation indeed if the testimony of one against whom a complaint is lodged could never form the basis for competent, substantial evidence").
REVERSED and REMANDED for further proceedings consistent with this opinion.
ALLEN and WOLF, JJ., concur.