653 So.2d 1081 (1995)
CHARLOTTE COUNTY, Florida, Petitioner,
v.
GENERAL DEVELOPMENT UTILITIES, INC., Respondent.
No. 94-1558.
District Court of Appeal of Florida, First District.
April 13, 1995.
Rehearing Denied May 12, 1995.
*1082 Phillip C. Gildan, and Elaine Johnson James of Nason, Gildan, Yeager, Gerson & White, P.A., West Palm Beach; and John R. Marks, III of Katz, Kutter, Haigler, Alderman, Marks & Bryant, Tallahassee, for petitioner.
Richard D. Melson of Hopping, Boyd, Green & Sams, Tallahassee, for respondent General Development Utilities, Inc.
Robert D. Vandiver, General Counsel, and Richard C. Bellak, Associate General Counsel, Florida Public Service Com'n, Tallahassee.
JOANOS, Judge.
Charlotte County petitions this court for a writ of certiorari or for review of preliminary agency action as provided by section 120.68(1), Florida Statutes, to review an order of the Florida Public Service Commission (PSC). The issue presented is whether the PSC has jurisdiction of a rate dispute between Charlotte County and General Development Utilities (GDU), when the complaint seeking damages for alleged overcharges for water services was filed after the utility had been sold to a local government and its PSC certificate was cancelled, but the charges giving rise to the dispute took place over an eighteen-month period when GDU was subject to the regulatory jurisdiction of the PSC. We deny the petition.
In June 1991, Charlotte County and GDU, a PSC-regulated utility, entered into a bulk water service agreement. The agreement provided that Charlotte County would purchase water service from GDU's West Coast Division, from water produced at GDU's North Port Water Treatment Plant (North Port), and from GDU's allocated share of water produced at the Peace River Water Treatment Plant, owned and operated by the Peace River/Manasota Regional Water Authority. Under the provisions of subsection 4.2 of the agreement, Charlotte County was required to accept the water service provided by GDU pursuant to subsection 4.1 of the agreement, and to pay to GDU the rates established by the PSC.
On June 21, 1991, GDU filed a request with the PSC for approval of the bulk water service agreement entered into between Charlotte County and GDU, after Charlotte County acquired a portion of GDU through the exercise of eminent domain. The proposed tariff specified two bulk rates: one rate for water produced at North Port and another rate (a cost pass-through rate) for Peace River water provided to Charlotte County. The PSC approved the proposed tariff with a modification which reduced the requested rate for North Port water from $2.16 to $2.10 per 1,000 gallons. The Order specified that it had no effect upon the currently approved rates and charges applicable to GDU's remaining customers.[1]
*1083 GDU provided water service to Charlotte County until December 9, 1992, when GDU's North Port water system was transferred to the City of North Port. During the course of the agreement, Charlotte County suspected that GDU improperly calculated the amount of water consumed by Charlotte County. On December 15, 1992, Charlotte County filed a breach of contract action against GDU in Charlotte County Circuit Court, alleging that GDU collected $400,000.00 in overcharges for water service provided over the eighteen-month period of the service. The complaint was filed six days after GDU's system was sold and one day after issuance of the PSC order cancelling the certificate for GDU's West Coast Division.
On January 8, 1993, GDU filed a motion to dismiss the complaint, or alternatively to abate the action, on grounds that the dispute was within the exclusive jurisdiction of the PSC. The Circuit Court judge granted the motion to abate to provide the PSC with the opportunity to determine whether it has jurisdiction of the cause, and whether it intended to exercise its plenary jurisdiction pursuant to Chapter 367 of the Florida Statutes. Charlotte County filed a responsive pleading, requesting, among other things, a declaratory statement that the PSC does not have jurisdiction of the billing dispute brought by Charlotte County against GDU.
The question of the PSC's jurisdiction was addressed at an Agenda Conference. The PSC staff and the commissioners recognized that the PSC never before had exercised jurisdiction in these precise circumstances. After a deferral for further study, the PSC staff recommended that jurisdiction be implied, based on section 367.011(2), Florida Statutes, because the alleged overcharges occurred during the period of the PSC's exclusive jurisdiction to resolve customer complaints over tariffed charges. Subsequently, the PSC issued its order determining that it has exclusive jurisdiction of the overbilling complaint, and directing that Charlotte County's claim should go forward, with a full hearing, as a customer complaint proceeding under the applicable PSC rule.
The cause is before us pursuant to Charlotte County's petition for certiorari or review of preliminary agency action. Charlotte County characterizes the controversy as a contract dispute, and contends the PSC does not have jurisdiction of this cause, because GDU's tariff charges are not at issue, and the legislature neither expressly nor implicitly vested the PSC with jurisdiction to resolve contract claims filed against a utility *1084 after that utility's certificate was cancelled. GDU takes the position that all of the service which Charlotte County alleges was overbilled was provided while GDU's West Coast Division was a PSC-regulated utility, and that the controversy is a tariff dispute, not a simple contract action.
Our review of the PSC order here at issue is pursuant to section 120.68(1), Florida Statutes, which provides in part:
(1) A party who is adversely affected by final agency action is entitled to judicial review... . A preliminary, procedural, or intermediate agency action or ruling, including any order of a hearing officer, is immediately reviewable if review of the final agency decision would not provide an adequate remedy.
The Committee Notes to Florida Rule of Appellate Procedure 9.100(c),[2] explain that the statutory authority to review non-final administrative action is analogous to and no broader than the right of review by common law writ of certiorari.
To obtain certiorari review, a petitioner must demonstrate: (1) the order to be reviewed departs from the essential requirements of law, and (2) it may cause material injury to the petitioner for which the remedy by appeal will be inadequate. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla. 1987); State v. Lozano, 616 So.2d 73 (Fla. 1st DCA 1993). "[T]he time, trouble, and expense of an unnecessary trial are not considered `irreparable injury' for these purposes." Lozano, 616 So.2d at 75. See also Continental Equities, Inc. v. Jacksonville Transportation Authority, 558 So.2d 154 (Fla. 1st DCA 1990).
The PSC authority to regulate water and wastewater systems is set forth in section 367.011(2), which provides:
(2) The Florida Public Service Commission shall have exclusive jurisdiction over each utility with respect to its authority, service and rates.
Subsection 367.021(12), defines "utility" in the following manner:
(12) "Utility" means a water or wastewater utility and, except as provided in s. 367.022, includes every person, lessee, trustee, or receiver owning, operating, managing, or controlling a system, or proposing construction of a system, who is providing, or proposes to provide, water or wastewater service to the public for compensation.
Utility systems which are "owned, operated, managed, or controlled by governmental authorities" are not subject to PSC regulation. § 367.022(2), Fla. Stat. (1993).
The parties to this cause agree that never before has the PSC exercised its regulatory authority in a fact scenario such as this, i.e., where a customer of a PSC-regulated utility filed suit for refund of alleged overcharges after the utility's applicable facility was sold to a governmental entity. Our determination of this matter is guided, in part, by the principle that the construction of a statute by an agency charged with its administration and enforcement is entitled to great weight, and will not be set aside unless clearly erroneous. Falk v. Beard, 614 So.2d 1086, 1089 (Fla. 1993). Further, in Florida Public Service Commission v. Bryson, 569 So.2d 1253, 1254-1255 (Fla. 1990), the supreme court instructed:
The PSC has the authority to interpret the statutes that empower it, including jurisdictional statutes, and to make rules and to issue orders accordingly. PW Ventures, Inc. v. Nichols, 533 So.2d 281 (Fla. 1988). It follows that the PSC must be allowed to act when it has at least a colorable claim that the matter under consideration falls within its exclusive jurisdiction as defined by statute. (Emphasis supplied.)
*1085 We are cognizant, as well, of the rule that "[a]n agency has only such power as expressly or by necessary implication is granted by legislative enactment." State, Department of Environmental Regulation v. Falls Chase Special Taxing District, 424 So.2d 787, 793 (Fla. 1st DCA 1982).
Based upon our examination of the applicable provisions of Chapter 367 and supreme court opinions construing PSC jurisdiction generally, we conclude the PSC has a colorable claim that the matter at issue falls within its exclusive jurisdiction as defined by statute. The record is clear that after sale of its North Port facility to the City of North Port, GDU continued as a utility, and as such, is still serving the public. The statute does not define utility by area. It appears the expression of legislative intent that regulation of utilities is in the public interest, envisioned the application of PSC expertise to the adjudication of matters as complex as the rate structure here at issue. In the circumstances of this case, the PSC has jurisdiction to resolve the question of the alleged overcharges occurring before the transfer of the utility's North Port facility and the cancellation of its North Port certificate. We do not reach the question whether the PSC's exclusive jurisdiction of water and wastewater systems encompasses disputes between a utility and its customer, which arose when the utility was subject to PSC regulation, but litigation was not commenced until after the utility ceased operation as a utility, as that question is not before us.
Petitioner Charlotte County has not shown that review of final agency action would not provide an adequate remedy. Accordingly, the petition for review of preliminary agency action is denied.
WOLF, J., concurs.
BENTON, J., dissents without opinion.
NOTES
[1] To illustrate the complexity of the billing structure between GDU and Charlotte County, we reproduce a portion of the PSC Order:

Because of the complexity of the circumstances surrounding the provision of water to Charlotte County, Charlotte County cannot be classified as a typical general service customer. One reason is the physical layout of the system, which has numerous connection points. Since the large transmission lines at the connection points do not lend themselves to metering without considerable expense, Charlotte County is not metered at any point in the transmission system for the delivery of water. Other reasons are the large volume of water transported to Charlotte County and GDU's purchase and transmittal of water from the Peace River Plant through the same lines as those that transmit water to Charlotte County and other GDU customers.
Due to the circumstances, the provision of water to Charlotte County presents a challenge for billing purposes. The rate structure is unlike any other bulk water rate previously approved for GDU's West Coast Division. At the time of our analysis of the filing, we were concerned that the proposed gallonage charge might not be sufficient, creating possible cross-subsidization by other GDU customers. We also questioned the lack of a proposed rate by GDU for the "wheeling" of water from the Peace River Plant to Charlotte County through GDU's transmission lines. Other concerns included the effect of the rate on earnings and the impact, if any, on the quality of service to GDU's other customers. The answers to these questions were predicated on understanding how the rate was developed from the cost study and how the quantity of water to be billed by GDU to Charlotte County was derived.
... .
From our evaluation of the tariff request, it appears that GDU's approach to isolating the plant involved in the delivery of water to Charlotte County is reasonable, and that associated expenses have been fairly allocated. We are, however, concerned about GDU's decision not to charge Charlotte County any more than it paid for the water purchased from Manasota and transported through GDU's system. The Agreement and tariff refer to this as a "pass-through." Upon our initial review of the "pass-through" provision of the contract, we were of the opinion that GDU should receive compensation for transporting the water from Peace River to Charlotte County over and above the purchase price of the water. However, it is difficult to isolate the costs associated only with the "pass-through" water since it is not known which lines are used... .
[2] The Committee Notes to rule 9.100(c) state:

It was the opinion of the Advisory Committee that such a right of review is guaranteed by the statute and is not dependent on a court rule, since Article V, Section 4(b)(2) of the Florida Constitution provides for legislative grants of jurisdiction to the district courts to review administrative action without regard to the finality of that action. The Advisory Committee was also of the view that the right of review guaranteed by the statute is no broader than the generally available common law writ of certiorari, although the statutory remedy would prevent resort to an extraordinary writ.