991 So.2d 417 (2008)
CNL RESORT HOTEL, L.P., Petitioner,
v.
CITY OF DORAL, Florida, et al., Respondents.
No. 3D07-1528.
District Court of Appeal of Florida, Third District.
September 24, 2008.
*418 Shutts & Bowen, Stephen B. Gillman, Stephen T. Maher, Miami, Suzanne Youmans Labrit, Tampa and David J. Coviello, Miami, for petitioner.
Siemon & Larsen, Charles L. Siemon, and J. Michael Marshall, Boca Raton, for respondent, City of Doral, Florida; and Richard E. Shine, Assistant General Counsel, Tallahassee, for respondent, Department of Community Affairs.
Before GERSTEN, C.J., and SHEPHERD and ROTHENBERG, JJ.
GERSTEN, C.J.
CNL Resort Hotel, L.P. ("CNL") seeks review of a non-final order dismissing certain claims from its petition challenging *419 the City of Doral's ("the City") proposed comprehensive development plan. We grant the petition and reverse.
CNL purchased approximately 620 acres of land within unincorporated Miami-Dade County (which later became incorporated into the City) for use as the Doral Golf Resort and Spa. The City subsequently adopted a comprehensive development plan ("the plan"). The Department of Community Affairs ("the Department") filed a petition with the Department of Administrative Hearings ("DOAH") challenging the plan's compliance with applicable zoning and planning criteria, in which CNL intervened.
The Department and the City ultimately settled, and CNL filed a second petition, as sole petitioner. This second petition contained three counts. Count I stated that the plan is inconsistent because it abrogates CNL's private property rights while benefiting surrounding private landowners, and the plan impermissibly utilizes "reverse spot" and "specific use" planning. Count II alleged that the plan exacerbates urban sprawl. Count III argued that the plan is internally inconsistent because it purports to protect private property rights and discourage urban sprawl while failing to do both.
The City moved to dismiss Count I and portions of Count III, contending that CNL attempted to present a constitutional takings claim which the Administrative Law Judge ("ALJ") lacked jurisdiction to review. The ALJ concluded that the essence of Count I was a constitutional takings claim and that the concepts of "reverse spot" and "specific use" were irrelevant in compliance determinations. Therefore, the ALJ granted the City's motion to dismiss Count I and the property rights protection portion of Count III, but permitted CNL to pursue its urban sprawl claim. CNL sought certiorari review of the dismissed counts.
CNL asserts that, for jurisdictional purposes, the interlocutory order is reviewable in this Court because final agency review would not provide an adequate remedy. CNL asserts that the ALJ erred in dismissing the essential claims of its petition because it incorrectly concluded that CNL alleged a constitutional takings claim. CNL further asserts that consideration of private property rights is part of reviewing a plan for compliance with applicable zoning and planning criteria.
The City contends that the interlocutory order does not show irreparable harm. Thus, this Court lacks jurisdiction. Concerning the merits, the City contends that the ALJ properly dismissed CNL's claim as a constitutional takings claim outside an ALJ's jurisdiction.
The Department concurs with CNL's assertion that the ALJ has subject matter jurisdiction to consider private property rights when evaluating a plan for a compliance determination. The Department also asserts that CNL should be allowed to present all factual evidence and legal argument establishing whether the City's plan violates the compliance criteria. We agree with CNL and the Department.
First, our threshold concern is whether there is jurisdiction to review the ALJ's non-final order. We conclude that this Court has jurisdiction over the ALJ's order because final agency review of the decision would not provide CNL an adequate remedy.
Section 120.68(1), Florida Statutes (2005), provides that a preliminary, procedural, or intermediate order of the agency or of an ALJ is immediately reviewable if review of the final agency decision would not provide an adequate remedy. See also *420 Fla. Const. Art. V, § 4(b)(2); Fla. R.App. P. 9.100(a), (c). The scope of review in this type of matter is "analogous to, and no broader than the right of review by common law certiorari." Fla. Dep't of Fin. Servs. v. Fugett, 946 So.2d 80, 81 (Fla. 1st DCA 2006) (citing Charlotte County v. Gen. Dev. Utils., Inc., 653 So.2d 1081 (Fla. 1st DCA 1995)).
On certiorari review, a petitioner must demonstrate that the lower court "departed from the essential requirements of the law, thereby causing irreparable injury which cannot be adequately remedied on appeal following final judgment." Belair v. Drew, 770 So.2d 1164, 1166 (Fla. 2000). An appellate court first determines the existence of an irreparable injury and the inability to correct it on final judgment before questioning whether the trial court departed from the essential requirements of law. Sardinas v. Lagares, 805 So.2d 1024, 1025 (Fla. 3d DCA 2001).
Here, we agree that CNL would be deprived of an adequate remedy and suffer irreparable injury due to the City having limited roadway capacity. In order to develop property, landowners need to obtain the requisite permits from the City. Thus, during the pending proceedings, the surrounding permitted neighbors will continue to develop their properties and consume the available roadway. In turn, once the available roadway capacity is filled, CNL will not be able to obtain a permit, and its development rights will be extinguished. Therefore, CNL has shown there is no adequate remedy without this Court's immediate review, and we have jurisdiction to hear CNL's petition.
Turning next to the merits of this case, the ALJ erred in likening Count I and the property rights protection portion of Count III of CNL's petition to a takings claim. In a cause of action for a taking, a property owner asserts that governmental regulation constitutes a taking of his or her property without just compensation. Fla. Dep't of Envtl. Prot. v. Burgess, 667 So.2d 267, 270 (Fla. 1st DCA 1995). A taking occurs where regulation denies substantially all economically beneficial or productive use of land. Tampa-Hillsborough County Expressway Auth. v. A.G.W.S. Corp., 640 So.2d 54, 58 (Fla. 1994).
Private property rights have long been viewed as sacrosanct and fundamentally immune from government interference. The strong tradition of protecting private property rights against governmental interference stems back to both English common law and Lockean philosophy. Lockean philosophy emphasized that property rights are a natural, pre-political attribute of human beings. See James W. Ely, Jr., The Guardian of Every Other Right: A Constitutional History of Property Rights 10 (2d ed. 1998).
Thus, it was only natural that our constitutional founders would safeguard property from governmental intervention. Our founders drafted the Fifth Amendment of the United States Constitution to provide that no person shall have property "taken for public use, without just compensation." See U.S. Const. Amend. V. The Fifth Amendment, Takings Clause, is made applicable to the states through the Fourteenth Amendment. See U.S. Const. Amend. XIV. Florida's state constitution also provides that "no private property shall be taken except for a public purpose and with full compensation." See Art. X, § 6, Fla. Const.
Florida further protects these sacrosanct private property rights when evaluating a comprehensive development plan. Florida zoning law requires that a governmental agency, such as the City, adopt a plan that coordinates with the state's plan. *421 See § 163.3177(6)(h), Fla. Stat. (2006). Florida's State Comprehensive Plan provides that "Florida shall protect private property rights and recognize the existence of legitimate and often competing public and private interests in land use regulations and other government action." See § 187.201(14)(a), Fla. Stat. (2006). Further, the goals and policies contained in the State Comprehensive Plan shall be reasonably applied where they are economically and environmentally feasible, not contrary to the public interest, and consistent with the protection of private property rights. See § 187.101, Fla. Stat. (2006).
Here, CNL asserted that the City's plan was not in compliance with applicable criteria because it abrogates CNL's private property rights "without relevant consideration of those rights by the City." CNL did not assert that the City took its property without just compensation. CNL merely wanted the City to properly consider its private property rights before enacting its plan.
Thus, since the consideration of private property rights is part of the goals and policies of a comprehensive development plan, the ALJ improperly dismissed CNL's property rights claims as a takings claim. The ALJ's order incorrectly pretermits the development and presentation of evidence on private property rights and the inconsistency and disparate impact of the City's plan on CNL's and all surrounding landowners' property rights.
As a result, we find that CNL was denied the opportunity to present evidence, concerning its private property rights, and unable to fully show why the City's plan was not in compliance with Florida's State Comprehensive Plan. Accordingly, we grant the petition for writ of certiorari, quash the order dismissing these claims from CNL's petition, and remand to the ALJ for further proceedings consistent with this opinion.
Petition granted, order quashed, and case remanded for further proceedings.